# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

EDDY BURKS,

        Plaintiff,

vs.                                No. CV 98-974 JP

CITY OF ALAMOGORDO, NEW MEXICO,
STEVE LEE, PAT McCOURT,
YOLANDA (LONI) CUEVAS,
JERRY FOSTER, and REBECCA W. EHLER,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before me on (1) Defendants' Motion to Dismiss Count One of Plaintiff's Complaint, or in the Alternative, for Summary Judgment and Limitation of Recovery to Injunctive Relief Against Any Remaining Defendants, filed May 10, 1999 (Doc. No. 11); (2) Defendants' Motion for Summary Judgment on Count Two of Plaintiff's Complaint, filed May 10, 1999 (Doc. No. 15); and (3) Defendants' Motion for Summary Judgment on Counts Three, Four and Six of Plaintiff's Complaint, filed May 10, 1999 (Doc. No. 19).[1]

## Parties

Plaintiff is an employee of the City of Alamogordo, New Mexico. Defendant City of Alamogordo is a political subdivision of the State of New Mexico located in Otero County, New Mexico. Defendant Steve Lee was the City's Deputy Director or Director of the Department of Public Safety ("DPS"). Defendants Pat McCourt and/or Rebecca W. Ehler were the Acting City

---

[1] There is no motion to dismiss Count Five of the six count complaint.

Manager or the City Manager and Chief Executive Officer of the City of Alamogordo. Defendant Yolanda (Loni) Cuevas is the personnel manager of the City of Alamogordo. Defendant Jerry Foster is a police officer who served first as a Watch Commander, then Administrative Assistant, and then Captain of DPS. All individual defendants are sued in both their official and personal capacities.

## Background

The allegations of the complaint reveal the following scenario: In 1982 Plaintiff was employed as a police officer with the City of Alamogordo DPS. He was promoted to Sergeant in 1986 and to Lieutenant in 1991. In 1996 Plaintiff cooperated and provided truthful information during an investigation of DPS. The matters under investigation included police malfeasance, criminal conduct, violation of rules and regulations and alleged wrongdoing by a captain of the department for working, carrying a firearm and driving a motor vehicle while intoxicated. After the issuance of a December 1996 report of the investigation, seven members of the department who were suspected of having cooperated, including Plaintiff, were labeled "the Magnificent Seven." Complaint ¶ 2. The captain, a 19-year veteran of DPS, retired quietly after the investigation.

In January 1997, Plaintiff refused to agree to "back the Department and ... not go against each other" in connection with a grievance filed by officers in the traffic division. Complaint ¶16. Plaintiff testified truthfully at the grievance hearing.

In February 1997, in retaliation for his truthful testimony during the investigation and at the grievance hearing, Defendants harassed and humiliated Plaintiff by transferring him from Patrol Lieutenant to Administrative Assistant, a position with less favorable working conditions.

2

In June 1997, in response to a harassment grievance, City Manager Robert Stockwell determined that Plaintiff had been harassed and transferred him back to patrol.

In March 1997, Plaintiff made allegations of misconduct against Defendant Lee for canceling, in violation of city ordinance, a traffic citation issued to the son of the Fire Chief at Holloman Air Force Base. After going through channels, Plaintiff took the matter to the District Attorney. In April 1997, Plaintiff learned that then-Lieutenant Defendant Foster had canceled a DWI citation that had been issued to one of the city commissioners, who had been arrested but improperly not booked into jail. Defendant Foster was thereafter promoted to Captain in apparent reward for the favor. Plaintiff also learned of another similar incident of cancellation of a DWI citation during his investigation of these incidents, at the request of City Manager Stockwell.

In August 1997, Plaintiff received from Defendant Lee his very first poor performance evaluation in fourteen years of service. After a written reply by Plaintiff, Defendant Lee retaliated in September 1997 by adding defamatory letters from other police officers to Plaintiff's personnel file. In violation of the personnel manual and the Peace Officers Employer-Employee Relations Act, N.M. Stat. Ann. § 29-14-7 (1997 Repl. Pamp.), Plaintiff was not allowed to see, sign or respond to the letters prior to their placement in his file. The letters allege irrational behavior, paranoia, psychological issues and concerns about Plaintiff's mental and emotional health. Defendants Lee and Foster intended to use the letters against Plaintiff should he testify in an upcoming grand jury investigation of DPS.

In September 1997, Plaintiff filed claims for libel, slander and defamation in connection with the letters placed in his personnel file. About this time, Defendant Lee's brother, the Sheriff of Otero County, lodged a false complaint against Plaintiff pertaining to a vehicle stop in which

the driver was apparently intoxicated. During the ensuing investigation, Defendant Foster refused to provide Plaintiff with a copy of the complaint against him. Plaintiff was ultimately exonerated, but during the proceedings, Plaintiff learned that the Sheriff and Defendant Foster were concerned about Plaintiff's upcoming testimony against a deputy sheriff involved in another case.

In October 1997, Plaintiff testified before the Otero County Grand Jury, which was investigating allegations of ticket fixing and other crimes by the Alamogordo Police Department. The grand jury indicted Defendants Foster and Lee but the charges were dropped in January 1998. In the meantime, Defendant Acting City Manager Ehler removed Defendants Foster and Lee from work in the police department, but both were allowed to work in other positions for the city. Later they were removed and put on administrative leave. Defendant Foster called a meeting at which he announced his replacement and encouraged loyalty among his fellow officers. Defendant Foster also stated that he would obtain a copy of the grand jury testimony and that he "would be back," implying that he would take revenge against those whom he determined were not loyal. Complaint ¶ 42.

In January 1998, as soon as the charges against Defendants Foster and Lee were dropped, Defendant Cuevas told Plaintiff that he was being investigated for possibly lying to the grand jury. During the investigation, Defendant Cuevas violated various policies and rules. In early February 1998, Defendant Foster reassigned Plaintiff to Administrative Lieutenant, with no one to supervise, no vehicle and no place to work. For a few weeks, he was told to work on animal control fencing, landscaping, graveling and visiting areas for animal control. His main task was to inspect DPS buildings to document cracks in the walls. This treatment was designed to humiliate

Plaintiff in front of the department personnel and to warn other officers about breaking ranks and testifying against another officer. After this period, Plaintiff was reassigned to the position of Safety Officer and put under the supervision not of DPS, but of the personnel manager, Defendant Cuevas, who is not a police officer. Since that time, Plaintiff has not done any police work and has been assigned tasks in safety administration and risk management for which he has no experience or education.

Plaintiff filed a grievance in March 1998, which was denied first by Defendant Foster, Acting Director of DPS, and by Defendant Cuevas. In April, Defendant McCourt denied Plaintiff's appeal. On August 12, 1998, Plaintiff filed his complaint entitled "Complaint for Violation of Civil Rights." Plaintiff alleges six causes of action or counts, under federal and state law, including 42 U.S.C. § 1983.

## Discussion

### I. Count I: Peace Officer's Employer-Employee Relations Act and Alamogordo Department of Public Safety Rules and Regulations

On May 10, 1999, Defendants filed their Motion to Dismiss Count One of Plaintiff's Complaint, or in the Alternative, for Summary Judgment and Limitation of Recovery to Injunctive Relief Against Any Remaining Defendants. The motion will be granted, dismissing Count One.

In considering a motion made under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim, the court must liberally construe the pleadings, accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). A complaint may be dismissed only if it appears to a certainty that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U. S. 41, 45-46 (1957). Thus, all well-pleaded facts, as distinguished

from conclusory allegations, must be taken as true.  See Swanson, 750 F.2d at 813.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  When applying this standard, the factual record and reasonable inferences therefrom are examined in the light most favorable to the party opposing summary judgment.  See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  The party moving for summary judgment bears the burden of "'showing'--that is, pointing out to the district court-- that there is an absence of evidence to support the nonmoving party's case."  See Celotex Corp. v. Catrett, 477 U. S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  See Bacchus Indus. Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of the pleadings.  See id.  Where the non-moving party will bear the burden of proof at trial, that party must go beyond the pleadings and designate facts so as to establish the existence of an essential element of the case to survive summary juegment.  See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998).

## A.     Right

Plaintiff claims that Defendants violated the Peace Officer's Employer-Employee Relations Act and Alamogordo Department of Public Safety Rules and Regulations, N.M. Stat. Ann. § 29-14-1 to -11 (1997 Repl. Pamp.) ("the Act") and the Alamogordo Department of Public Safety Rules and Regulations, Alamogordo, N.M., Dep't of Pub. Safety Rules and Regs. § 3.322 (Rev'd June 30, 1997) (incorporating the Act by reference).  Plaintiff claims three specific violations.  First, he argues that in September 1997 Defendant Lee placed defamatory and derogatory letters in his file without allowing

him to see, sign or respond to them.[2]  Second, Plaintiff contends that during an investigation into a June

1997 traffic stop, Defendant Foster refused to provide a copy of a complaint against Plaintiff.[3]  Third,

Plaintiff claims that in January 1998, Defendant Cuevas, at the instruction of Defendant Ehler, told

Plaintiff that the Act did not apply to Plaintiff and that no transcript or tape recording could be made of

an investigatory hearing.[4]  Plaintiff also alleges that at the same time Defendant Cuevas, apparently of

her own initiative, violated the Act by interrogating Plaintiff during other than waking hours and while

he was not on duty.[5]  Defendant moves to dismiss because the Act does not provide for a cause of action

or a remedy.

In the absence of a reported decision on whether the Act will support a private right of action,

both parties point to National Trust v. City of Albuquerque, 117 N.M. 590, 874 P.2d 798 (Ct. App.

1994) as providing the general framework for implying rights of action under New Mexico statutes.[6]  In

that case, the New Mexico Court of Appeals considered whether plaintiffs had standing to bring an

action under the New Mexico Prehistoric and Historic Site Preservation Act.  See National Trust, 117

N.M. at 592, 874 P.2d at 800.  In finding that plaintiffs had standing, the court considered Cort v. Ash,

422 U.S. 66 (1975), but rejected the exclusive application of that case and its factors for implying a right

---

[2] Although Plaintiff does not cite to specific provisions of the Act, he must have in mind N.M. Stat. Ann § 29-14-7 (proscribing filing of documents with adverse comments in the record of a peace officer unless the officer has read and signed the documents or a refusal to sign is noted by the chief administrator and witnessed).

[3] See id. § 29-14-4(C)(2) ("[A]n officer shall be informed of the nature of the investigation.").

[4] See id. § 29-14-4(E) ("[A]ny interrogation of an officer shall be recorded.").

[5] See id. § 29-14-4(A) ("[A]ny interrogation of an officer shall be conducted when the officer is on duty or during his normal waking hours.").

[6] Federal courts interpreting a state statute should apply state rules of construction.  See Phelps v. Hamilton, 59 F.3d 1058, 1071 n.23 (10th Cir. 1995).

of action.[7]  The court of appeals held that, "[a] state's public policy, independent of the first three <u>Cort</u> factors, may be determinative in deciding whether to recognize a cause of action."  <u>Id.</u> at 594, 874 P.2d at 804.  A court may draw state public policy from a statute.  <u>See id.</u> at 593, 874 P.2d at 803.

Defendants maintain that while Plaintiff is admittedly within the class the Act protects, there is no evidence of legislative intent to create a right of action and that to imply one would undermine the purpose of the Act.  They also argue that finding a cause of action would frustrate rather than enhance the policy of the Act.  Plaintiff argues the text of the Act demonstrates public policy which would be furthered by fashioning a remedy in his favor.

I agree with Plaintiff.  The Act lists as its purpose "to prescribe certain rights for peace officers, particularly when the are placed under investigation by their employer."  N.M. Stat. Ann. § 19-14-2(B).  New Mexico's policy is to provide peace officers with enumerated rights.  To decline to recognize those rights for an officer such as Plaintiff under departmental investigation, through refusal to fashion a remedy, would be to nullify those rights and thus undermine public policy.

Defendants point out that other purposes of the Act are to provide "stable relations between peace officers and their employers" and to "enhance law enforcement services provided to the citizens of New Mexico."  N.M. Stat. Ann. § 19-14-2(A).  Defendants invite me to "[i]magine the chaos caused by allowing officers to sue their employers every time a procedure contained in the Act is not followed."  Defendants' Reply to Mot. to Dismiss Count One at 3.  They argue that enforcement by officers of their

---

[7] The court of appeals listed the four <u>Cort</u> factors as follows:
> (1) Was the statute enacted for the special benefit of a class of which the plaintiff is a member?  (2) Is there any indication of legislative intent, explicit or implicit, to create or deny a private remedy? (3) Would a private remedy either frustrate or assist the underlying purpose of the legislative scheme?  and (4) Would implying a federal remedy be inappropriate because the subject matter is one traditionally relegated to state law?

<u>National Trust</u>, 117 N.M. at 593, 874 P.2d at 801.  The court in <u>National Trust</u> found that the fourth factor had no application at all in state court and the first three were not exclusive.  <u>See id.</u>

statutory rights would undermine stability and degrade law enforcement.  To the contrary, permitting unremedied abuse of fair investigatory procedures would itself be chaotic and degrading to law enforcement.  Judicial recognition of a statutorily defined right therefore furthers each purpose of the Act and the public policy of the state.

**B.      Remedy**

Defendants ask that the remedy for an implied right under the Act be restricted to injunctive relief.  Plaintiff, on the other hand, claims monetary damages for violation of the Act which resulted in loss of earnings, employment and retirement benefits, humiliation and pain, emotional distress, and costs incurred while searching for a new job.[8]

> The usual rule is that where legal rights have been invaded and a[n implied] cause of action is available, a federal court may use any available remedy to afford full relief.  The general rule nevertheless yields where necessary to carry out the intent of Congress or to avoid frustrating the purposes of the statute involved.

Guardians Ass'n v. Civil Serv. Comm'n of New York, 463 U.S. 582, 595 (1983) (White, J., plurality opinion) (internal citations and quotations omitted).  The same principles announced by Justice White should govern the inquiry where, as here, a federal court interprets a state statute.  Applying these principles, I find that the monetary damage remedy Plaintiff seeks should not be implied.

The Act provides procedural guidelines for peace officers and their employers.  The purpose of the statute, discerned from the text of the Act, does not reflect an intent to vest peace officers with substantive rights.  Cf. Jeffers v. Doel, 99 N.M. 351, 353, 658 P.2d 426, 428 (1982) (recording act provides those it protects with an implied remedy for damages).  Instead, the Act lays out "provisions" of procedure for "administrative actions."  See N.M. Stat. Ann. § 29-14-2.  It states, for example, the

---

[8] In his complaint, Plaintiff also asked for injunctive relief.  However, Plaintiff apparently dropped this request in his response, stating that "an injunction is ineffective because the harm has already occurred."  Response to Mot. for Summ. J. on Count One at 8.

method of interrogation, id. at § 29-14-4(C)(3) ("an officer shall be informed of the name and rank of the person in charge"), duration, id. at § 29-14-4(D)(1) ("each session...shall not exceed two hours"), and methods of defense, id. at § 29-14-7(B) ("[a] peace officer may file a written response...within thirty days").

City of Miami v. Cosgrove, 516 So.2d 1125 (Fla. Dist. Ct. App. 1987) is instructive. In that case the Florida District Court of Appeal found injunctive relief, rather than damages, to be the exclusive remedy for violations of internal police investigatory procedure. See Cosgrove, 516 So.2d at 1126. The court interpreted a portion of the Florida statutes known as the Policeman's Bill of Rights, which bore a strong similarity to the New Mexico Act. See id. It described their state's Policeman's Bill of Rights as procedural rather than substantive when it provided, as does the Act in New Mexico, guidelines for giving notice to policemen under internal investigation and barring retaliation for exercising rights under the statutes in question. See id. at 1126-28. Although the Florida court largely based its holding on a provision in the Policeman's Bill of Rights, conspicuously absent from the New Mexico Act, indicating that an injunction was the exclusive remedy, the opinion suggests that procedural provisions should not in any event give rise to the substantive damage action plaintiff seeks. See id. at 1128. (stating that statute listing injunction as the remedy enforces procedures established elsewhere in the Policeman's Bill of Rights and is not a vehicle for the restoration of substantive rights). Like its Florida counterpart, the Act in New Mexico provides procedural safeguards, not substantive rights, and thus does not imply the damage remedy Plaintiff seeks.

## II.  Count II:  Due Process

On May 10, 1999, Defendants filed a Motion for Summary Judgment on Count Two of Plaintiff's Complaint.  The motion will be denied in part and granted in part.

Plaintiff alleges in Count Two that City of Alamogordo policy created property rights in his employment, as indicated by city ordinances, the Personnel Manual, Police Department Rules and Regulations, and the New Mexico Peace Officer's Employer-Employee Relations Act. Defendants[9] deprived Plaintiff of these property rights, he argues, when they "demot[ed] and terminat[ed]" him from his Public Safety position in which he had a reasonable expectancy of continued employment as a police officer. Complaint ¶ 71. Plaintiff contends he was not given a meaningful hearing before or after his alleged demotion or termination. Plaintiff also alleges in the same Count that he had a property interest "in a right ¶ proper procedures" in his demotion and termination. Id. ¶ 73. He alleges a violation of this right when not given a meaningful hearing.

Defendants concede that Plaintiff has a property interest in continued employment with Defendant City of Alamogordo, but not in the specific position of Public Safety Officer. Defendants first maintain, in essence, that Plaintiff was not demoted or terminated but only transferred. Defendants claim Plaintiff makes out no violation because he was merely transferred and thus did not lose a protected

_____

[9] Plaintiff does not explicitly name the Defendants against whom he asserts Count Two. Paragraph 47 of the complaint alleges that on February 2, 1998, Defendant Foster "told Plaintiff he was being assigned to" a new position. Paragraph 51 states that on February 25, 1998, Defendants Lee and Cuevas "told Plaintiff he was again being assigned...to the position of Safety Officer." Paragraph 73 of the complaint refers to, inter alia, a failure to give notice and opportunity to respond by "Defendant City Manager and Acting City Manager" following Plaintiff's demotion or termination. That paragraph also states "Defendant City Managers" did not act in a neutral hearing capacity. Paragraph 77 names Defendant City of Alamogordo because "the City Manager or Acting City Manager" is the "appointing and final authority in personnel matters." Paragraph 4 of the complaint names Defendant Ehler "and/or" Defendant McCourt as the "acting City Manager or City Manager and Chief Executive Officer of the City of Alamogordo." The complaint does not indicate the dates of their tenure, but at paragraph 50 describes Defendant McCourt as "City Manager" as early as February 13, 1998. Defendant in reply appears to concede that Count Two alleges a violation against the City Manager and Defendant City of Alamogordo. When viewing inferences from this record in a light most favorable to Plaintiff, I will infer that Count Two names Defendants Ehler, McCourt, and City of Alamogordo.

position.  Second, Defendants argue that Plaintiff has no property interest in procedures for demotion and termination.  Finally, Defendant City of Alamogordo argues that as it was not the "moving force" behind the injury alleged, it cannot be liable.  Defendants' Memo. in Supp. of Mot. for Summ. J. on Count Two at 9.

### A.    Continued employment as a police officer

A due process charge involves a two-step inquiry: (1) whether a protected interest exists and, if so, then (2) whether an appropriate level of process was afforded.[10]  See Hatfield v. Board of County Comm'rs., 52 F.3d 858, 862 (10th Cir. 1995).  As to step one, "[w]hether state officials have violated the Fourteenth Amendment is a question of federal constitutional law, but the preliminary question of whether a plaintiff possessed a protected property interest must be determined by reference to state law."  Id. at 863.  A property interest, or a legitimate claim to entitlement, may have as its source statutes, contract and mutually explicit understandings.  See Richardson v. City of Albuquerque, 857 F.2d 727, 731 (10th Cir. 1988).  A local government's personnel policy manual can also create a property interest.  See Hatfield, 52 F.3d at 863.

Plaintiff claims a property interest arose in essentially three ways.  First,  he asserts an interest arose through the Alamogordo Personnel Manual which plainly states that city employees shall be terminated or demoted only for "just cause."  See Plaintiff's Exhibits for Response, Exhibit 5 at 7-11 to -12.  See also Hatfield, 52 F.3d at 863 (stating that "for cause" provisions give rise to protected property interests which demand certain constitutional protections).  Second, Plaintiff states he was hired with the express understanding that he would be a Public Safety Officer, creating another interest.  Third, he

---

[10] Plaintiff discusses both steps in Count Two, alleging that he had an protected interest and that Defendants did not afford him an appropriate level of process.  Defendants base their Motion for Summary Judgment solely on step one, arguing no protected interest in a DPS position.

contends the Personnel Manual created an interest by barring transfers to the detriment of an employee's Public Employment Retirement Association ("PERA") benefits. Defendants claim Plaintiff has no protected property interest in the position of Public Safety Officer.

### 1. Demotion and termination

Plaintiff points to facts upon which a reasonable jury could find that Defendants demoted or terminated Plaintiff from a protected position. Defendants consistently maintain that Plaintiff was transferred rather than terminated or demoted as a city employee. Plaintiff agrees that he remains a city employee but argues Defendants terminated him as a Public Safety Officer and demoted him within the city's positions of employment. Defendants deny he was terminated as a Public Safety employee or that he was demoted because Plaintiff did not lose rank or pay. Defendants seemingly concede that if material factual evidence suggests Plaintiff was demoted as a city employee, then Plaintiff's claim should survive summary judgment. Termination, of course, without due process from a protected position would violate the Constitution. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). Demotion in such an instance would also be a violation. Hennigh v. City of Shawnee, 155 F.3d 1249, 1254 (10th Cir. 1998) (stating that "if the statute or regulation places substantive restrictions on the discretion to demote an employee, such as providing that discipline may only be imposed for cause, then a property interest is created").

Plaintiff applied for work as a Public Safety Officer, or police officer, in 1982 and was hired as a Public Safety Officer soon after. In 1986 he made Sergeant. In 1991 he was promoted to Lieutenant. Among the duties of Lieutenant are supervising and overseeing shift personnel.

Plaintiff claims that on February 2, 1998 Defendant Foster told Plaintiff he "was being assigned to a position called Administrative Lieutenant." Complaint ¶ 47. Plaintiff alleges Defendant Foster told

him that he would have no one to supervise and no authority.  Plaintiff states that Defendant Foster represented that he would be Watch Commander when a Lieutenant was sick or on vacation.  Even though one Watch Commander was soon out sick for three days, Plaintiff was never used as a Watch Commander.  Defendant Foster told Plaintiff he could use the Watch Commander's vehicle "when not in use."  Id.  Plaintiff was told he would need to find a place to work and could use Corporal Kizer's office while the Corporal was sick.  Plaintiff states, "[t]his transfer was to a less desirable job and was a demotion."  Id.

In his new position, Plaintiff worked on animal control fencing and landscaping in animal control areas, in spite of the fact that there was an animal control officer and in spite of Plaintiff's lack of experience, training or background in these subjects.  Plaintiff's primary job, however, was to inspect DPS buildings and document cracks in the walls.  These tasks, he claims, were assigned to humiliate him and were without just cause.  At no time during his stint as Administrative Lieutenant was Plaintiff ever used in any capacity as a police officer.

On February 25, 1998, Defendants Lee and Cuevas told Plaintiff he was reassigned to the position of Safety Officer.  Plaintiff was instructed to report to Defendant Cuevas, who Plaintiff claims is not qualified under Alamogordo DPS Rules and Regulations to supervise a Public Safety Officer.  At no time has Defendant Cuevas been a member of DPS and she is not certified as a peace officer.  No other DPS members have ever been supervised by a non-DPS employee.  Plaintiff contends that the Safety Officer position largely involves safety administration and risk management.  Plaintiff feels that he lacks the education and experience for the position and that, unlike in a police position, he now has no opportunity for advancement.  Plaintiff claims he never sought a position outside of DPS.

Plaintiff has met his burden of showing an issue of material fact as to whether he lost a protected

position. The conduct described suggests Defendants terminated Plaintiff as a Public Safety Officer, or police officer, by moving him to the non-police position of Safety Officer. The facts suggest that the parties had an explicit understanding when Plaintiff was hired that he would take a position as a Public Safety Officer only. A jury could also conclude that the Safety Officer position to which he was moved is in fact outside of DPS, or is a non-police position, in which event Plaintiff would have been moved from a protected position. Further, the conduct described suggests Defendants demoted Plaintiff as a city employee. Transferring Plaintiff from an active police position to an unutilized Watch Commander whose main task was to count cracks, and soon after to a position in all but name out of the Public Safety field, smacks of demotion, regardless of what name Defendants give it.

### 2. Transfer

Even if he was not demoted or terminated from a protected position, but laterally transferred, a jury could find that this transfer violated a due process right. Plaintiff argues that he has a protected right created by the Alamogordo Personnel Manual not to be transferred to the detriment of his retirement benefits. <u>See</u> Defendants' Motion for Summary Judgment on Counts Three, Four and Six, Exhibit 4 at 5-1 ("Employees cannot be laterally transferred outside their PERA Retirement classification where the transfer is detrimental to the employee's vested interest, unless the transfer is employee initiated."). Defendants argue that this provision does not create a property interest which has been violated because there is no finding that Plaintiff's benefits have been negatively impacted.

A lateral transfer, if protected by a statute or a contract, implicates a property interest. <u>See</u> <u>Anglemyer v. Hamilton County Hosp.</u>, 58 F.3d 533, 539 (10th Cir. 1995). Like a statute or a contract, the Personnel Manual operates in this case to create a property interest. Further, Plaintiff has produced compelling factual evidence that his move from police officer to Safety Officer negatively impacted his

retirement benefits.  In a letter from PERA New Mexico, Public Employees Retirement Board, dated March 18, 1998, Assistant General Counsel Tracy M. Hughes, stated that "a transfer from police lieutenant to that of a safety officer, even if the safety officer position remains with the City of Alamogordo's DPS, will affect the service requirement you must meet in order to retire pursuant to the PERA Act."  Plaintiff's Exhibits for Response, Exhibit 1-C.  The author elaborated by explaining that Safety Officer is not a police position under the New Mexico Statutes and PERA regulations.  Thus, Plaintiff must work twenty-five years before retiring rather than the twenty years he would need as a police officer.  While Defendants maintain that in spite of this letter "there has been no finding that [Plaintiff's] benefits have been negatively impacted," Defendants' Reply to Mot. for Summ. J. on Count Two at 8, a jury could find Plaintiff's transfer to Safety Officer could have a negative impact on his retirement benefits.[11]

### B.      Procedure

Defendants argue that to the extent Plaintiff claims "a property interest in proper procedures in his demotions and termination...his claim fails on its face."  Defendants' Memo. in Support of Mot. for Summ. J. on Count Two at 7-8.  Plaintiff did not respond to this argument.

With respect to Plaintiff's claim that he has a property interest in procedures, I will grant Defendants' Motion for Summary Judgment.  First, Plaintiff failed to respond and thus under a local rule

---

[11] Defendant City of Alamogordo has guaranteed to provide Plaintiff with benefits equal to what he would receive as police officer in the event PERA disqualifies Plaintiff if he retires after only twenty years.  I decline to consider the Defendant's offer in my decision, however, for two reasons.  First, Defendant's guarantee is an attempt to circumvent the regulations that give rise to Plaintiff's property right.  If considered, the guarantee would undermine the Due Process Clause by condoning unconstitutional conduct merely because it is financed.  Second, as Plaintiff points out, Defendant's "guarantee" may be invalid.  See N.M. Const. art. IV. § 27 (proscribing the increase in salary of any officer, except as otherwise provided); id. art. IX § 14 (barring municipalities from pledging its credit or making donations to persons).

has consented to the granting of the motion.  See D.N.M. LR-Civ. 7.5(b).  Second, Defendants are correct that procedures do not give rise to a property interest.  "'Property' cannot be defined by the procedures for its deprivation. . . ."  See Loudermill, 470 U.S. at 541.  See also Rusillo v. Scarborough, 935 F.2d 1167, 1171 (10th Cir. 1991) (citing to New Mexico law).

### C.    Municipal liability

In his complaint, Plaintiff states, "[b]ecause Defendant CITY OF ALAMOGORDO's appointing and final authority in personnel matters is the City Manager or Acting City Manager, the violation of Plaintiff's due process rights may fairly be said to be the representation and execution of the policies or customs of Defendant CITY OF ALAMOGORDO."  Complaint ¶ 77.  Defendant City of Alamogordo moves for summary judgment as to itself on the grounds that it cannot be liable "solely because it employs a tortfeasor," because "a 'policy' giving rise to liability cannot be established merely by identifying a policymaker's conduct that is properly attributable to the municipality," and because plaintiff has not demonstrated a direct causal link between the city's action and the deprivation of rights. Defendant City of Alamogordo relies exclusively on Board of County Comm'rs v. Brown, 520 U.S. 397 (1997).

I will grant Defendant City of Alamogordo's Motion for Summary Judgment as to Count Two, because Plaintiff failed to refute Defendant City of Alamogordo's argument.  See D.N.M. LR-Civ. 7.5(b) (failure to respond is consent to grant motion).  To the extent Plaintiff responded, he partially conceded the validity of Defendant City of Alamogordo's argument by concluding that "the Defendant's City of Alamogordo's *own policy* prohibits transfers when detrimental to the employee's vested retirement."  See Response to Defendants' Mot. for Summ. J. on Count Two at 13 (emphasis added).  If his position is now that Defendant City of Alamogordo's policy is to protect federal rights, Plaintiff can

hardly maintain a section 1983 claim against that Defendant on policy grounds.

## III.   Count III:  Breach of Contract

On May 10, 1999, Defendants filed a Motion for Summary Judgment on Counts Three, Four and Six of Plaintiff's Complaint.  With respect to Count Three, the motion will be granted in part and denied in part.

Count Three begins at paragraph 83, by incorporating the allegations made in all previous paragraphs.  Paragraph 84 is less than clear.  It states, "[o]ne of the terms of the implied and express contract of employment between Plaintiff and the CITY OF ALAMOGORDO was that Plaintiff could only be demoted, transferred for disciplinary reasons or discharged for just cause and in accordance with the procedures set forth in the Policy."  Paragraph 85 continues, "[a]nother term of the implied and express contract of employment between Plaintiff and the CITY OF ALAMOGORDO was that Plaintiff could be laterally transferred for non-disciplinary reasons only if the transfer was with his consent if the transfer impacted his retirement."  Paragraph 85 goes on to quote the section of the Personnel Manual stating this retirement benefit consideration.  The remainder of Count Three is a recitation of facts alleging retaliatory conduct, including demotions and discharge, "without just cause and. . . in breach of employment contract and procedures set forth in the CITY OF ALAMOGORDO'S Policy."  Complaint ¶ 93.

### A.        Paragraph 84

Defendants interpret the ambiguous language in Paragraph 84 to state that Plaintiff claims he was transferred for disciplinary reasons and therefore should have been provided with certain procedures. Defendants appear to concede the existence of a contract but argue there was no breach because the transfer was non-disciplinary.  Plaintiff responds by contending that the transfer was disciplinary.

Plaintiff reasons, apparently, that the transfer was without just cause and/or was not in accordance with procedure and thus breached the contract. In his response Plaintiff does not argue or point to any evidence of the existence of a contract with terms of transfer. Defendants question the existence of a contract for the first time in their reply, but only to argue the absence of an express written contract to transfer only for disciplinary reasons.

In order to meet its burden of proof, a party claiming breach of contract must show the existence of a contract, breach, causation and damages. See Camino Real Mobile Home Park v. Wolfe, 119 N.M. 436, 444, 891 P.2d 199, 207 (1995).

Defendants' Motion for Summary Judgment on Count Three, Four and Six, will be granted with respect to Plaintiff's claim in Count Three that Defendants breached an express contract to transfer only for disciplinary reasons for just cause and in accordance with established procedures. Although Plaintiff has pointed to facts which, if proven at trial, would indicate breach of contract, he has shown nothing in the record that even hints that a contract on transfer exists. The Alamogordo Personnel Manual does not contain language that would give rise to such a contract. Plaintiff does not point to anything else in the record that suggests the existence of such a contract. Plaintiff has not met his burden under McKnight, 149 F.3d at 1128, to show the existence of the dispositive fact, for which he would bear the burden of proof at trial, that a contract to transfer only for disciplinary reasons exists.

### B.      Paragraph 85

On the other hand, Defendants' Motion to Dismiss Counts Three, Four and Six, with respect to Plaintiff's claim in Count Three that Defendants breached an express contract not to transfer Plaintiff to the detriment of his vested PERA retirement interest will be denied. Plaintiff has met his burden of pointing to breach of contract facts for which he will bear the burden of proof at trial. Plaintiff has

19

provided evidence that a contract exists.  <u>See</u> Defendants' Memo. in Supp. of Mot. for Summ. J. on Counts Three, Four and Six, Exhibit 4.  He has also shown facts which a jury could use to find Defendants breached that contract when Plaintiff was transferred to Safety Officer.[12]  <u>See, e.g.,</u> Plaintiff's Exhibits for Response, Exhibit 1-C.  He has also pointed to facts indicating Defendants caused that breach and that he suffered damages as a result.  <u>See id.</u>

## C.     Paragraph 93

Defendants' Motion for Summary Judgment on Count Three, Four and Six, will be denied with respect to Plaintiff's claim in Count Three that Defendants breached a contract to discharge Plaintiff only for just cause.  Defendants did not address this claim; they nowhere pointed out an absence of evidence to support the nonmoving party's case.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U. S. 317, 325 (1986).[13]  Moreover, Plaintiff has identified facts which indicate the existence of a contract to discharge Plaintiff from the position for which Defendants hired him only for just cause.[14]  <u>See</u> Plaintiff's Exhibits for Response, Exhibit 2 at 8; <u>id.</u> Exhibit 5 at 7-12.  He has also pointed to facts throughout the record

---

[12] To the extent Defendants argue that they breached no contract because Defendant City of Alamogordo has offered to guarantee Plaintiff's benefits at the police officer level, the argument is rejected for the reasons explained at <u>infra</u> note 11.  Defendants' arguement that they did not breach because the evidence suggests only that the transfer ***may*** have a negative impact on Plaintiff's retirement benefits only when Plaintiff chooses to retire, fails because enough of a factual question exists on definite, present harm to present the issue to a jury.

[13] While Defendants' summary of Plaintiff's complaint suggests Defendants do not see the allegation of a contract to discharge only for good cause, paragraph 93 succeeds to state the claim where paragraph 84 arguably fails.  Paragraph 93 states, in relevant part, that the "discharge of Plaintiff by Defendants was without just cause and was in breach of employment contract and procedures set forth in the CITY OF ALAMOGORDO'S Policy."

[14] The language of the personnel manual would create an implied contract.  <u>See</u> <u>Hernandez v. Home Educ. Livelihood Program</u>, 98 N.M. 125, 128, 645 P.2d 1381, 1384 (Ct. App. 1982) (remanding for trial on breach of employment contract where personnel manual language gave rise to implied employment contract); <u>Forrester v. Parker</u>, 93 N.M. 781, 782, 606 P.2d 191, 192 (1980) (same).

that imply Defendants breached the contract in the employment agreement by discharging Plaintiff for other than just cause.

## IV.      Count Four: Breach of Implied Covenants of Good Faith and Fair Dealing

Plaintiff maintains in his complaint that Defendants breached the implied covenants of good faith and fair dealing by terminating and demoting him from his employment as a Public Safety Officer, or police officer, because he (1) testified truthfully in an investigation into city police wrongdoing, (2) testified truthfully before an Otero County Grand Jury, (3) testified truthfully in a governmental grievance hearing, and (4) brought to the attention of the City Manager, Mayor and District Attorney matters of public concern involving reasonable suspicion that a crime and/or official misconduct was committed by the Director of DPS.

Defendants move for summary judgment on the ground that "Plaintiff was neither demoted or terminated from his employment with the City of Alamogordo and the Department of Public Safety." Defendants' Memo. in Supp. of Mot. for Summ. J. on Counts Three, Four and Six at 7. Defendants' argument is implicitly two-pronged. First, they claim that there was no contract for Plaintiff to be specifically a Public Safety Officer. The contract, Defendants contend, was a general one for paid employment with the City of Alamogordo in exchange for work. Second, Defendants argue that they breached no covenants implied in Plaintiff's City of Alamogordo work contract because Plaintiff's transfer did not hinder his receipt of the salary benefit under that contract.

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 438, 872 P.2d 852, 856 (1994). "The concept . . . requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." Id. The plaintiff in Bourgeous worked

for the defendant as the director of nursing, under contract, and was terminated.  See id. at 436, 872 P.2d at 854.  She sued for breach of employment contract and breach of the covenant of good faith and fair dealing.  See id. at 435, 872 P.2d at 853.  The trial court granted summary judgment as to the good faith and fair dealing claim and the jury found for the plaintiff on the breach of contract claim.  See id. at 435-36, 872 P.2d at 853-54.  Some employees of the defendant testified that the plaintiff's job performance had been poor.  See id. at 436, 872 P.2d at 854.  The plaintiff testified that no supervisor ever told her she was working unsatisfactorily.  See id. at 436-37, 872 P.2d at 854-55.  She also testified that she believed the defendant was operating in violation of the law due to understaffing.  See id. at 436, 872 P.2d at 854.  On these facts, the state supreme court held it was error for the trial judge to grant summary judgment on the good faith and fair dealing claim.  See id. at 436, 872 P.2d at 857 (refusing to remand for retrial because only one compensatory damage recovery permissible).

Defendants' Motion for Summary Judgment on Counts Three, Four and Six, with respect to Count Four, will be denied for similar reasons.  First, Plaintiff has pointed to evidence suggesting that he had a contract, express or implied, with the City of Alamogordo to serve as a Public Safety Officer.  See Plaintiff's Exhibits for Response, Exhibit 2 at 8.  Second, he has shown extensive evidence indicating that Defendants breached the covenant of good faith and fair dealing by moving him out of his employment as a Public Safety Officer for multiple, bad faith reasons.  The evidence of bad faith and a lack of fair dealing is even stronger here than in Bourgeous.  Unlike in Bourgeous, no one in this case argues that Plaintiff could no longer perform his Public Safety Officer duties.  Indeed, Defendants offer no explanation at all for Plaintiff's transfer from his former Public Safety Officer position to counter Plaintiff's allegations of bad faith.  Plaintiff has met his burden and his claim for breach of the implied covenant of good faith and fair dealing survives summary judgment.

## V.     Count Six: Breach of Implied Contract

Paragraphs 112 and 114 in Count Six of the Complaint when read together state a claim for breach of an implied contract not to discharge Plaintiff for public policy reasons from his job as a DPS Lieutenant.  In moving for summary judgment on Count Six, Defendants again make the argument that because Plaintiff was not discharged from city employment, summary judgment must be granted.  In their reply Defendants add an argument as follows:  Plaintiff alleges he was terminated for performing an act that public policy would encourage.  Such an allegation is really a claim for wrongful termination.  New Mexico recognizes wrongful termination only for at-will employees.  Plaintiff was not an at-will employee.[15]  Plaintiff therefore has no standing to bring the claim in Count Six, which is an improperly labeled wrongful termination claim, but if Plaintiff does have standing, the government has not waived tort immunity.

Defendants urge a novel rule.  Defendants essentially request a ruling that an employee such as Plaintiff, who they believe is not an at-will employee and who should therefore enjoy greater procedural rights prior to termination, has no claim for breach of implied contract where that breach is caused by reasons which violate public policy, whereas an at-will employee could bring an identical claim.

Defendants' Motion for Summary Judgment on Counts Three, Four and Six, with respect to Count Six will be denied for two reasons.  First, New Mexico law does not compel the rule Defendants seek.  The case to which Defendants point, Vigil v. Arzola, 102 N.M. 682, 699 P.2d 613 (Ct. App.

---

[15] An employee is "at-will" where not governed by an employment contract for a specific period of time.  See Bottijiliso v. Hutchison Fruit Co., 96 N.M. 789, 791, 635 P.2d 982, 984 (Ct. App. 1981), modified on other grounds, Michaels v. Anglo-American Auto Auctions, 117 N.M. 91, 869 P.2d 279 (1994); Hernandez, 98 N.M. at 128, 645 P.2d at 1384.  A personnel guide may nevertheless create an implied employment contract for such an employee without an employment contract for a prescribed duration.  See Hernandez, 98 N.M. at 128, 645 P.2d at 1384.
     Defendants have not pointed to any evidence as to the duration of the contract.  Plaintiff has not addressed whether he agrees he is not an at-will employee.

23

1983), does stand for the proposition that an at-will employee can maintain an action for wrongful termination (retaliatory discharge).  <u>See</u> <u>Vigil</u>, 102 N.M. at 688, 699 P.2d at 619.  However, <u>Vigil</u> does not address whether an employee such as Plaintiff, who Defendants claim is not at-will, can maintain a wrongful termination action.  Moreover, <u>Vigil</u> does not explain why a breach of implied contract action should actually be termed a wrongful termination claim.[16]  Instead, the two causes of action co-existed in <u>Vigil</u>.  <u>See id.</u> at 686, 699 P.2d at 617 (affirming the dismissal of breach of contract, where contract based on personnel manual, because plaintiff was probationary and not entitled to manual procedure; remanding for trial on retaliatory discharge).  Count Six plainly states a claim for breach of implied contract, not wrongful termination, and there is no reason to rename it as Defendants propose.

Second, Count Six, is a subset of the claim in Count Three that Defendants breached a contract not to discharge Plaintiff without just cause.  <u>See</u> <u>infra</u> III.C (denying Defendants' motion for summary judgment with respect to Plaintiff's claim that Defendants breached a contract to discharge Plaintiff only for just cause).  If a jury were to find the existence of an implied contract which Defendants breached, it would find liability under Count Three, whether or not that breach violated public policy.  Under the facts alleged (breach of employment contract following truthful testimony and identifying wrongful conduct of public concern) a jury could not find a violation of public policy that at the same time constituted just cause for discharge.  Count Six therefore, while stating a claim that survives summary

---

[16] No other New Mexico case cited by Defendants or reviewed by me indicates that an employee who is not at-will cannot bring a wrongful termination suit or that a breach of implied contract claim should be made into one for wrongful discharge.

judgment, does not state a separate claim. For the reasons discussed at <u>infra</u> III.C, Defendants' motion to dismiss Count Six is denied.[17] Count Six is stricken, however, under Fed. R. Civ. P. 12(f) to avoid confusing the jury because Count Three subsumes Count Six and renders it redundant.

IT IS THEREFORE ORDERED that

(1) Defendants' Motion to Dismiss Count One of Plaintiff's Complaint, or in the Alternative, for Summary Judgment and Limitation of Recovery to Injunctive Relief Against Any Remaining Defendants, filed May 10, 1999 (Doc. No. 11), is GRANTED, dismissing Count One;

(2) Defendants' Motion for Summary Judgment on Count Two of Plaintiff's Complaint, filed May 10, 1999 (Doc. No. 15), is DENIED with respect to Plaintiff's claim that he has a due process interest in continued employment as a Public Safety Officer, GRANTED with respect to Plaintiff's claim that he has a due process interest in procedures and GRANTED with respect to Defendant City of Alamogordo, dismissing Defendant City of Alamogordo from Count Three;

(3) Defendants' Motion for Summary Judgment on Counts Three, Four and Six of Plaintiff's Complaint, filed May 10, 1999 (Doc. No. 19) is GRANTED with respect to Plaintiff's claim in Count Three that Defendants breached an express contract to transfer only for disciplinary reasons and DENIED in all other respects; and

---

[17] The <u>Bourgeous</u> rule, that a plaintiff cannot receive more than one compensatory contractual damage award, will apply here. <u>See</u> <u>infra</u> IV (citing <u>Bourgeous</u>, 117 N.M. at 439, 872 P.2d at 857).

(4)     Count Six is STRICKEN under Fed. R. Civ. P. 12(f) as redundant.


_____
**UNITED STATES DISTRICT JUDGE**